Mr. Orlando, we'll hear from you first. Good morning, Your Honors. Again, Tom Orlando for Appellant Defendant Travelers Insurance Company. May it please the Court. We ask this Court to rule that faulty workmanship was the cause of loss as a matter of law. The facts have always been undisputed in this case at every procedural step, summary judgment, trial, throughout the trial, and I want to talk a little bit about the facts. On June 16, 2014, roughly 25% of the roof panels on this building blew off the roof. All of those panels are located in the southeast quadrant of the roof, and there's a good schematic of this in the record at JAPX 2038 Volume 8. Starting at the southeast corner, the first two panels running along the longer horizontal side of the roof, what we've referred to as the eave side, they were not screwed to the structure at all. Starting at the same southeast corner, but running along the other edge, the rake edge, which is the one that goes up towards the peak, as many as 11 out of 12 screws along the first 20 feet of that shorter side were not installed correctly. The panels are attached to the roof structure at the perimeter and at the peak, so all the panels that are at the perimeter are screwed into that perimeter, and then the panels that are at the peak, they're screwed into the peak. All of the internal panels are fastened to those panels and to each other with clips, so I think a majority of the panels on the roof are not fastened to the roof structure itself, they're fastened to each other with clips, and ultimately they are fastened by clips to the peaks that are attached to the structure, and it's called a floating roof system. On June 16, the wind came from the southwest, yet it was only at the southeast corner of the roof that was impacted. Because two panels were not screwed down at all, and roughly 10 panels were barely screwed down, those panels lifted and blew off. But because there were other panels attached to those panels that were not affixed to the roof structure itself, they were also impacted. I think there was a description of it called spaghetti by one of the experts, think of a zipper or a wave, as though the panels that were not properly installed started to blow off, there was a ripple effect for those that were attached to those panels. However, not one roof panel in any other section of the roof was impacted, even though the wind was coming from the southwest, no panel at that corner of the building was impacted. The probable wind gusts were 46 to 60 miles per hour, but even if greater, the building was designed for 90 miles an hour. So the wind was within the design capacity, and the only section of the roof that was damaged was in the during and after the trial. What does that mean for us legally? The insurance policy excludes loss or damage caused by or resulting from faulty, inadequate, or defective workmanship. Critical to this case, again, is that the wind did not impact any of the other three corners of the roof where the panels were properly installed. This loss resulted because the panels at the southeast corner of the roof were not properly installed. Had the panels on the southeast corner been properly installed, they would have survived the storm unscathed, just like the other panels in the other three quadrants did. Henderson's own expert agrees. Application of the undisputed facts to the unambiguous policy language requires a finding as a matter of law that this loss is not covered. This is a builder's risk policy that does not provide a contractor's warranty or performance excludes faulty workmanship. The policy is not designed to pay for the contractor's faulty work. You agree there's no anti-concurrent clause in this policy, right? There is no anti-concurrent clause in the section which where this exclusion is enumerated. There is elsewhere. Okay, thank you. Thank you for that. So the issue is then whether the workmanship is the sole proximate cause of the injury, right? Under Iowa law? Well, we would say that you don't have to get to that for all the reasons I just expressed, but if we were to open the door to a causation analysis, which the Amish Connection Court did, although it's interesting that the Iowa Supreme Court and Amish had a lengthy discussion about causation, and then at the end said, in any event, we resolve the coverage claims based on the unambiguous contract language, not tort causation principle. Amish-Callel, anticipating that. So that's the question. Go ahead. The Callel line of cases, so there are two general causation analyses that have been discussed in the Iowa cases. One is the sole proximate cause, one is the proximate cause line of cases derived from Callel and Corrigan. Those cases are liability insurance cases where the underlying acts that caused injury were human acts. So in Callel, there were two acts. One was attaching a rope to a tree that somebody did, and then somebody attached the rope to a truck, and one could arguably be covered under the policy and one not. That was a liability context. In Corrigan, it was the criminal conduct of one person and then the negligent supervision over that person of another. It's in that context that Iowa has developed this line of cases about sole proximate cause in which it's been said that you can have more than one proximate cause. Well, that of course derives from tort law. Well, their sentence is worded this way. They act like, on the front of the sentence, I'm interpreting of course, an accident has two independent causes. I think there they're talking about, you know, real cause. Something caused something. This was caused by the wind and the rope, right? Well, we would say not in any legal sense. We would say it was not caused by the wind, huh? Well, the three quadrants that were properly installed, the wind did nothing. So the building was impacted by the same wind, the same wind speeds on the same day. We have. So the jury believed the wind did it, huh? Well, we don't know what the jury believed because of the instruction that was given to them, which communaled all of these causation standards and allowed... But did you object? Is that the instruction you did not object to? We did object to it. I thought you didn't. Well, they say we didn't, but we did. Which one's at issue? That's the way to put it to you. The one that's at issue, we did object. So we fashioned a jury instruction that was based on the efficient proximate cause doctrine, which the trial judge tweaked a bit. But then the trial judge added that last line after saying that the jury was to determine the sole proximate cause. Then the last sentence the judge added, there can be two proximate causes. That test seems rather inconsistent. We did object to that, and we explained in our objection it's would be confusing and be inconsistent. So we've preserved that objection, and we believe that the jury reached the decision it reached. I thought if you actually look at the transcript, and I glanced at it, I thought you don't give a reason, really. It's allegedly transcript 452, 453. Do you really give a reason or not? Well, I've got the citation we have as the trial judge. I don't have specifically what was said, but that is the site for the objection. What do you think is an independent cause under Iowa law under this discussion of sole proximate cause? As I understand it, you have to have two independent causes to trigger this whole sole proximate cause inquiry. Is that right? That's right. In the Iowa Supreme Court just this year, in the city of West Liberty, the squirrel case addressed that issue. Sort of. They did. I don't know. Well, on your specific question, I think they said that the deficient proximate cause document only applies if two separate or distinct perils could have occurred independently of the other and caused damage. And in that case, they said, well, this... Where is that? What page in West Liberty? Oh, you don't have it there. Okay, I'll find it. I can get it during the break. In that case, the court said the squirrel by itself did not cause any damage, and therefore the deficient proximate cause document did not apply. Here we say the wing by itself did not cause any damage. How do we know that? Because the other three quadrants of the roof, which were susceptible to the same wind that day, experienced the same wind that day, they were not damaged. The only section of the roof that was damaged is where the panels were not properly attached. So the wing by itself did not cause damage, therefore it's not an independent cause as the Iowa Supreme Court has articulated the standard. But regardless of... I don't know. It's confusing. Those Iowa cases are a little confusing. I mean, in Kalel, the rope by itself, I suppose, didn't cause any damage, nor did the truck by itself. But they think those were independent causes. Well, I agree with you that the cases are confusing. What strikes me about Amish and West Liberty is that after having gone through quite a bit of discussion about these causation standards, the Iowa Supreme Court in both cases at the end of the day said we're not going to invoke those standards, and they didn't go to a jury. Those two cases are summary judgment cases where the Iowa Supreme Court upheld the summary judgment for the insurer based on the plain meaning of the exclusion. So there's this lengthy analysis of causation, but at the end of the day, the court said, but this is not a case for that because under the unambiguous language of the policy, it's not covered, and it didn't go to the jury, and that's what should have happened here. So your argument here in unambiguous language is what's the unambiguous language? Caused by? Loss and damage caused by resulting from the faulty workmanship, which everybody agrees, the other side, the trial judge, that's unambiguous language. What do you think caused by means? Well, it was caused by the fact that these panels, the panels weren't affixed to the roof. They weren't installed properly. So naturally when the wind came, the panels didn't stay on the roof. I mean, we all have roofs on our houses and buildings to withstand wind, which is ubiquitous and is going to happen, and if you don't put, if you don't install it correctly, the panels aren't going to stay, and that's what happened in this corner of the roof. I say that I'm in my... All right, you may reserve. Ms. Oxley, we'll hear from you. May it please the court, thank you. I want to start just briefly with the facts. Judge Benton noted this case went to trial, but I just want to point out that it wasn't, there weren't 10 panels that had missing screws. There were a total of 15 to 20 missing screws in the first two panels, and yet Mr. Regala, who was Traveler's expert, testified that the missing screws along that eave would not have been sufficient to cause a failure in 60-mile-an-hour winds, and so he was even recognizing that there had to be some other cause. But so this idea that the only panels that were affected by the wind were the ones with the missing screws is just blatantly contrary to the facts, which again went to a jury, but the only two panels with missing roof blew off. I don't know how many panels that was, but it was much more than two, and it was much more than 10. So that's just from the factual standpoint. I think that Judge Culleton, you kind of have pointed to what really is the issue in this case, and as it appears to this court on appeal. First of all, we're trying to determine what the Iowa Supreme Court would do provision does not have an anti-concurrent cause provision related to this particular exclusion, which means that the parties did not use that as a contractual way to contract out of application of the sole proximate cause doctrine. So that puts us within the sole proximate cause doctrine, regardless of what the language is in within the construction exclusion. Why is that? Why couldn't the unambiguous language take us out of the sole proximate cause analysis? Because... By saying if it's caused by the defective workmanship, it's not covered. Because that's not the only thing that was a cause. So the Amish connection... Well, does cause mean but-for cause? Not... That's a very good question. Cause means but-for cause, and the wind was a but-for cause. I mean, excuse me. Right. Then the exclusion would apply, right? And that's why the anti-concurrent cause provision is so important. So one set of their exclusions said, the following are excluded regardless if anything else contributed in any way. Everything is excluded, period. But the faulty construction exclusion is contained within subsection three of the exclusions, and it does not have that same language. So it leaves open the possibility that there can be more than one cause. And so while the exclusion says, if faulty construction is a cause, then it's excluded. That still leaves open the possibility of more than one cause, concurrent causes, and that's what leads you then to what Amish construction said. That Amish construction relied on the fact that that provision included an anti-concurrent cause, and that's why it granted summary judgment. Now, when we say that, are you talking about the sentence, but if loss or damage by covered cause of loss results, we will pay for that resulting loss or damage? I'm talking about the full, right. That's in three. That's the second sentence of three. Right. Well, it starts with, we will not pay for loss or damage caused by result, right? Yes. That's what I'm referring to. It's the full exclusion. How do you put those two sentences together? The second part is the resulting loss exception to the exclusion. And in this case, the district court. The second sentence have anything to do with concurrent cause, independent cause, or any other kind of cause? It has to do with resulting losses, which is different than concurrent causes. Then have a thing to do under Iowa law, you say, with concurrent cause or any of the causation stuff I was talking about. Right. It's the first sentence that's the key then. It really is. The resulting loss, and I think that the Sebo case, I believe from Florida, kind of talks about, it talks about the reason that you have the concurrent cause, why it even applies, the sole proximate cause issue even applies. But there are, so resulting is a sequence. Concurrent happens at the same time and together. And so that is where the district court said, the resulting, the district court refused to consider the wind as a resulting cause of loss because he thought it swallowed the rule. But he didn't stop there. And the same thing, the Supreme Court of Iowa did the very same thing in the West Liberty case, which also was a resulting loss exclusion. It excluded arcing, but it had an, unless it resulted in fire and then it would cover fire. And the Iowa Supreme Court said they originally relied on that, but then decided that there were no damages from fire. So they moved away from that. But the Supreme Court didn't stop there. That's when they looked at the structure of all the exclusions. There were three exclusions in that case, like there are here. One had an anti-concurrent cause provision. But the arcing exclusion did not. And so... Why do you need an anti-concurrent cause provision if you say that if something is caused by defective workmanship, we don't cover it? Because that assumes that that's the only cause. It depends what cause means, I guess. Why can't cause mean but for cause? In which case, if your excluded reason is a but-for cause, it doesn't matter whether there was a concurrent cause. There's not an Iowa case that uses a but-for cause in that way. Well, there's one line in Amish Connection I wanted to ask you about in that regard. It says toward the end of their discussion, after they talk about Collal and Corrigan, they say there would have been no water damage here but for the rainfall. And damage caused by this rain is not covered. That's right before they say, in any event, we resolve the coverage claims based on the unambiguous contract language, not toward causation principles. But I wondered whether that suggests that cause means but-for cause, and but for the rainfall there is but for the workmanship here. The, I think you have to look at the entire opinion, excuse me, and when they discuss the different, all of the sole approximate cause and concurrent cause cases, excuse me, it would have been very easy to say but-for. I think you could apply but-for in almost any situation where there are two causes, and then it's a matter of but-for what, I think is the question. That again seems to be bringing, if we want to talk about bringing tort principles in, that's what you're doing is trying to bring tort principles into this policy. But it goes back to contract interpretation. This insurance policy is a contract. You have to read contracts as a whole. When they're in Corrigan actually said that the purpose of an anti-concurrent cause provision is the parties choosing to contract out of the concurrent cause or sole approximate doctrine that otherwise would apply. And so, and West Liberty picked up on that as well then, and so they looked at the full structure of the policy and they said, again, three part, three different types of exclusions where one type has an anti-concurrent cause clause but another one doesn't, and the one that does not is subject to concurrent cause analysis. You think West Liberty says that? West Liberty walked through the three different, and there was an issue in West Liberty about whether it was the anti-concurrent cause clause would have applied and the court specifically walked through those very same three subsets and said where it was in one but not in the other, then that means that the sole approximate cause language applies, or the doctrine applies. I think it goes back to the general contract interpretation when you have one provision that expressly says something and another provision that expressly does not, the inclusion and the exclusion has to be given, meaning why would you need to have the anti-concurrent cause clause in any of the provisions if all exclusions were a but-for, and then you would never have to have an anti-concurrent cause provision, so that would make that reasoning that all exclusions are but-for exclusions would mean that that provision, that language would be superfluous in the other exclusion provision. I think if one thing, How many belts and suspenders? Well, I think, I suppose you can use contract, whichever contract rules you want to use, but I'm not sure that belts and suspenders necessarily overrides superfluous, but I think the courts, there would be no reason for Amish Connection, the Supreme Court, again, we're trying to decide what the Iowa Supreme Court would do here, and there would have been no reason for Amish Connection, the court in Amish Connection, and in West Liberty to even go into these discussions of whether or not there's independent causes if the but-for was the actual rule that applied to insurance context. Maybe I was being unfair to them by saying they're confusing, but they do go through all that, but then in the end say, and it doesn't matter, we don't use tort causation principles, so maybe it was all unnecessary. But I don't think they would have, I mean, the Iowa Supreme Court is a court of discretion. They don't have to take cases. This case, the Amish Connection case started out in the Court of Appeals, and then they had to ask for further review. I believe the Amish Connection did. I know West Liberty did, and so if that was the end of the story, West Liberty, the Supreme Court would not have needed to take it up, but obviously there was an issue there that the Supreme Court was trying to address, but I would like to get to your question, and I understand, I agree that they are confusing. With respect to the jury instructions, I mean, during that set-in-motion language in that instruction, they were fine that it was sole proximate cause, but they really wanted the set-in-motion because that worked better for them than the instruction from Grinnell that we were arguing for. So to the extent that there's any confusion by the jury instructions, that was all. Travelers won the battle on the jury instructions, but then they lost the war when the jury found against them with respect to that, but I think that there is a way to make sense of what it means to be independent, and the distinction is if the causes themselves are dependent on each other. So in the West Liberty, the squirrel case, what the court said was that the arc, not looking at the damage that was caused, but the arc itself could not have existed but for the squirrel. It's looking at both of the causes, and the same thing in Corrigan, which is the case with the negligent supervision resulting in the criminal act at the daycare. There would have been no negligent supervision had there been no criminal act. It's looking at the causes. Are the causes dependent on each other? So then if you look at then Colell, like Judge Culleton, I think you pointed out, using a rope and tying it to a pickup to then pull the tree down are two different independent acts that work together to cause the damage that occurred in that case. So it's looking at whether or not the causes are independent, and in this case, the wind was very much independent of the faulty construction. The wind did not cause the construction defects, and the missing screw certainly did not cause the wind. It's only that... Now are we back to causes of causes? I just heard that in your last few sentences. We are. And if you think of it as perils, maybe, I mean insurance is about perils. So does one peril cause another? And in the West Liberty case, the squirrel was one of the perils, and the arcing was the other peril. And in that case, the court was very clear to say the arcing could have had to have a cause. So the court was looking at the cause of the peril, and it said that the cause was the other peril, the squirrel, which is what made them dependent and not independent. What about the rain and the pipe though? Why wouldn't those be independent? The wind and the workmanship here, why wouldn't that be? I think that the Amherst construction case unfortunately has some language that is inconsistent because it says this is more like Corrigan, but at the end it ultimately says these were concurrent causes. It said that the... They didn't say summary judgment was appropriate because the rain was a but-for cause. No, they said summary judgment was appropriate because they read that as containing an anti-concurrent cause provision. So it didn't matter what else was involved, rain was all that was involved. And if you read Justice Heck's dissent, he said that the So I think his dissent actually is probably the best kind of explanation of how these things seem to work together. But I think in the end, if we're applying Iowa law and trying to decide what the Iowa Supreme Court would do with this case, I think it's clear that the Iowa court... First of all, Amherst connection makes clear that the sole proximate cause analysis needs to apply. Then the issue is just whether or not the wind and the faulty or the missing screws are considered independent. And by definition, they have to be... Concurrent causes are always going to work together. That's the whole point of it. In SIVO, which I referenced, the Florida case, the whole point of concurrent causes is when two causes that cannot independently cause the same what damage occurred, but they work together. That's when you have concurrent cause analysis, and that's when you go through the sole proximate cause. And Iowa courts have made clear that in that situation, the default is that coverage is provided unless the excluded cause is the sole proximate cause. That issue went to the jury, and that jury's decision should be affirmed. Thank you. Very well. Thank you for your argument. Thank you. Would you care to make rebuttal, Mr. Orlando? Yes, thank you, Your Honor. Why don't we start where we all agree, which is that the anti-concurrent cause language is not prefatory language to the faulty workmanship exclusion. We all agree on that. It also was not prefatory language in the West Liberty policy to the arcing exclusion. It existed elsewhere in the policy, in the West Liberty policy, just as it exists elsewhere in our policy. But it was not prefatory language to the arcing exclusion that was at issue there, not prefatory language to our faulty workmanship exclusion. What does that mean? Where do we go from there? You still have to go through an analysis. And in West Liberty, they talked about whether or not there was an independent cause to get into a causation analysis. But there's two components to independent cause. One is whether the causes are independent, the perils are independent of each other, but also whether they independently cause damage. Yes, the wind is independent of the construction. They happened at different times. But the wind did not cause damage. But Iowa case says that's what they mean by independent. Well, it's the West Liberty. If you read that sentence again, to be independent, they have to independently be able to cause damage. And we know that the wind did not cause damage that day to the panels that were properly stoned. How do you explain Calel under that model? Well, Calel is a different model because it's using tort principles when there's human activity. It's sort of a tort proximate cause standard that has worked its way into liability insurance policies that then the Iowa Supreme Court did bring into Amish Connection, which was a property loss. And I think that has led to some confusion. But even if you apply the sole proximate cause, again, the only thing that caused the damage here was the improper construction. So it's sort of a, for want of a nail, the roof was lost. Yeah. Very simple. It is. It's very simple. Whether it's sole proximate... I mean, we can disregard all of the conflicting testimony about winds up and winds down, and the fact that an open building is subject to more roof damage than a closed building. That's all irrelevant to this case. Well, Henderson tried to elicit that testimony about the uplift. The testimony did not come in that way. There is no evidence that the uplift had anything to do with this. No, that evidence did not come in. The expert testified that with an open building... I noticed there's one picture of a, well, it's a self-tapping screw or bolt, I guess you'd call it. It's lying there on the ground. Yes. Is that the key to your case? Well, it's one of the missing keys because it's one of the missing bolts that didn't put the panel in place. I say that I'm out of time, unless there are any further questions. Very well. Thank you for your argument.